IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID ROBERT BENTZ,

          Plaintiff,

v.

SUSAN KIRK, et al.,

          Defendants.

Case No. 18-cv-18-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a summary judgment motion filed by Susan Kirk (Docs. 146 and 147). Kirk argues that Plaintiff David Robert Bentz, an inmate of the Illinois Department of Corrections ("IDOC"), failed to exhaust his administrative remedies against her. Bentz filed a response (Doc. 159) in opposition to the motion, and Kirk filed a reply (Doc. 163). The Court held a hearing on May 18, 2020, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2007).

## BACKGROUND

Bentz filed his lawsuit pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). On May 24, 2018, Bentz filed an Amended Complaint (Doc. 24). Bentz alleges he was the victim of a staff assault on May 11, 2014, from which he sustained injuries to his neck area. These injuries caused him chronic pain, jaw pain, swelling to his left shoulder, neck, and head areas, vision issues in his left eye due to swelling and pressure, rotation issues with his neck and head due to chronic swelling, and occasional leg pain.

Relevant to the deliberate indifference claim against Kirk, Bentz's Amended Complaint alleges that on March 19, 2016, Bentz met with Kirk and she failed to provide him with adequate medical care for his chronic pain, stating that his cervical spine was not a serious or chronic issue (Doc. 24, p. 10). She did not look at his medical file or examine him, and she refused to put him in to see the doctor (*Id.*). After she learned that Bentz received his injuries as a result of the May 11, 2014 incident, she refused to refer him to the doctor. His Amended Complaint also alleges that Kirk and other defendants refused to provide him with any care from April 29, 2016 to June 20, 2016 (*Id.* at p. 11).

Bentz file a number of grievances during the relevant time period. A number of those grievances are documented by the Court in a Report and Recommendation issued by Magistrate Judge Daly on September 3, 2019 (*See* Doc. 160, pp. 2-9). In addition to those grievances, Bentz identifies several additional grievances that he filed:

**May 11, 2014 Grievance**: The grievance is labeled as an emergency and describes the May 11 assault and his request for medical care for his injuries (Doc. 2, pp. 52-53). Bentz states in his response that he placed the grievance in the institutional mail on May 12, 2014, and that Lieutenant Kent Bookman threw the grievance away the following day, May 13, 2014 (Doc. 159-1, pp. 3-5).

**May 29, 2014 Grievance**: This grievance complains that John and Jane Does are not providing him with medical care following the May 11 assault (Doc. 2, p. 54). Bentz alleges that he submitted the grievance but never received a response.

**April 30, 2016 Grievance**: This grievance identifies Susan Kirk as "Susan Kulis" (Doc. 2, p. 67). The grievance alleges that Bentz submitted a sick call slip to Kirk on March 17, 2016, but an officer told him that Kirk stated she would not see him and he would

have to put in another request (*Id.*). The grievance also discusses the May 19, 2016 meeting with Kirk when she told him his condition was not serious or chronic. The grievance was received by the counselor on May 2, 2016 (*Id.*). On May 3, 2016, the healthcare unit responded to the grievance (*Id.* at p. 68). Bentz states that he never received a response to the grievance, although the counselor did respond. He states in his declaration that he submitted the grievance to the grievance officer by institutional mail and never received a response (Doc. 159-2, p. 2). There is no record of a grievance officer or response from the Administrative Review Board ("ARB").

## LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the

place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

As an inmate confined within the Illinois Department of Corrections, Bentz was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his

claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the ARB within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief

Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

## ANALYSIS

The only grievance at issue in this case is Bentz's April 30, 2016 grievance. At the *Pavey* hearing, Bentz acknowledged that he could not have written a grievance about Kirk prior to the first time he met with her, and his Amended Complaint alleges that he first met with Kirk, identified in the Amended Complaint as Susan Kulis, on March 19, 2016 (Doc. 24, pp. 9-10). The only grievance which specifically identifies Kirk is Bentz's April 30, 2016 grievance. Bentz acknowledges that the grievance was not fully exhausted but argues that he did not receive a response from the grievance officer. If true, then Bentz's attempts at exhaustion would be deemed thwarted, and he would be allowed to proceed with his lawsuit. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources).

Although Bentz testified that he submitted the grievance to the grievance office, the Court does not find Bentz's testimony credible. Bentz testified that he submitted the grievance to the grievance office but could not recall when or how he did so. His

declaration indicates that he submitted it through the institutional mail (Doc. 159-2, p. 2), but there is no evidence in the record to suggest that the grievance was ever sent by Bentz or received by the grievance office. Kelly Pierce, a grievance officer at Menard, testified that if a grievance was received by the grievance office, it would be logged on Menard's grievance logs. Bentz's April 30 grievance does not appear on any of the grievance logs from the relevant time period (Doc. 147-2).

Pierce further testified that when grievances are received, they are logged, receive a grievance number, and are stamped by the grievance office. Bentz's grievance lacks any of these telltale signs that it was received by the grievance office, which suggests that he did not submit the grievance. Bentz also acknowledged that most of the time he documented on the grievance when and how his grievance was submitted, although he testified that he did not make those notations on every occasion. The majority of his grievances in the record have notations in Bentz's handwriting, indicating when he submitted the grievance (Doc. 147-1, pp. 17-72; 147-2, pp. 60-96).[1] His April 30, 2016 grievance has a handwritten notation from Bentz, indicating that it was "sent to counselor by box on 4/30/2016" (Doc. 2, p. 67). The grievance does not, however, include a handwritten notation indicating when it was sent to the grievance office. The lack of any notation by Bentz suggests that he did not send this grievance to the grievance office as he testified.

Bentz's cumulative counseling also discredits his testimony that he submitted his

---

[1] Only Bentz's October 2, 2014 grievance lacks any notations as to when the grievance was sent (Doc. 147-1, pp. 65-66; 147-2, pp. 95-69). The majority of his other grievances in evidence have handwritten notations indicating when he submitted them to the counselor, grievance officer, and ARB.

grievance. The cumulative counseling summary indicates that his grievance was returned by his counselor on May 3, 2016 (Doc. 147-3, p. 13). Although Pierce testified that an inmate can write or speak to his counselor about the status of his grievance, Bentz never inquired about the status of his April 30 grievance. The cumulative counseling summary indicates that he was seen on May 16, 2016, July 11, 2016, August 5, 2016, and August 26, 2016 but he did not inquire about the status of any grievances (*Id*. at pp. 11-13). In fact, on August 5 and 26 Bentz stated that he had no issues. Nor is there any evidence that he submitted any letters to the counselor inquiring about his grievance.

The Court acknowledges that Bentz is not required by the grievance procedures to inquire about the status of his grievances. But his failure to do so goes to his credibility as to whether he actually submitted the grievance. His counseling summary indicates that he inquired about other grievances he submitted. On February 6, 2015, he submitted a kite to the counselor indicating he was not satisfied with a grievance response and his counselor responded that he should submit it to the grievance office (*Id*. at p. 16). An entry from March 16, 2016 indicates that Bentz inquired about earlier grievances and his counselor informed him they had been forwarded to the grievance office (Doc. 147-3, p. 13). On June 5, 2017, the counseling summary notes that he spoke with his counselor about previous grievances (*Id*. at p. 9). But he never inquired about his April 30 grievance, which suggests that he never submitted the April 30 grievance for review.

There is simply no evidence in the record to support Bentz's testimony that he submitted his grievance to the grievance office. In fact, the evidence in the record discredits that testimony. Thus, the Court finds that Bentz did not submit his April 30, 2016 to the grievance office and failed to exhaust his administrative remedies as to Susan

Kirk.

## CONCLUSION

For the reasons stated above, the Court finds that Bentz failed to exhaust his administrative remedies as to Susan Kirk. Kirk's motion for summary judgment (Docs. 46, 47) is **GRANTED**, and all claims against her are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

**DATED:   May 20, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**